Brenda McQUADE, Robert McQuade, Charles A. Zarbo, and Cathy Zarbo

v.

MICHAEL GASSNER MECHANICAL & ELECTRICAL CONTRACTORS, INC., General Tower Company, General Communications Company, and Michael Gassner.

Civ. No. H–83–442.

United States District Court, D. Connecticut.

April 11, 1984.

---

Joseph Rubin, Jon L. Schoenhorn, Graham, Murphy & Rubin, Hartford, Conn., for plaintiffs.

John W. Lemega, Thomas J. Hagarty, Halloran, Sage, Phelon & Hagarty, Richard C. Robinson, Sorokin & Sorokin, Hartford, Conn., for defendants.

## RULING ON PENDING MOTIONS AND ORDER

JOSÉ A. CABRANES, District Judge.

In this action plaintiffs seek compensatory and punitive damages from defendants pursuant to 18 U.S.C. § 2520,[1] for allegedly intercepting, tape recording, and threatening to disclose the contents of plaintiffs' personal telephone conversations in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as

---

**1.** 18 U.S.C. § 2520 provides,

Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person—

    (a) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;

    (b) punitive damages; and

    (c) a reasonable attorney's fee and other litigation costs reasonably incurred.

A good faith reliance on a court order or on the provisions of section 2518(7) of this chapter shall constitute a complete defense to any civil or criminal action brought under this chapter.

amended, 18 U.S.C. §§ 2510–2520 ("Title III").

On June 23, 1983, following an application by plaintiffs, the court entered an order, pursuant to which certain cassettes, said to contain tape recordings of plaintiffs' personal conversations allegedly intercepted illegally by defendants, were conveyed to the Clerk of the Court and placed under seal. The order provided that "[n]o person shall examine, copy, record, audit, erase, alter, destroy or otherwise make use of any of the aforedescribed items prior to their surrender to the Clerk of the Court nor shall any of the defendants, their agents, trustees or employees, disclose the substance, content or other information contained in said tape recordings without express authority from the Court."

On November 9, 1983, defendants filed two motions and a supporting memorandum of law ("Defendants' Memorandum"). The first motion requested a modification of the court's order of June 23, 1983 to permit defendant Michael Gassner to discuss the contents of the tape cassettes with counsel. Gassner maintained that such discussions were necessary to enable his counsel to investigate a defense based upon prior consent to the interception and taping by parties to the conversations, pursuant to 18 U.S.C. § 2511(2)(d),[2] as well as to prepare a defense to the allegations giving rise to the claims for punitive damages.[3]

Defendants' second motion requested the court to conduct an *in camera* inspection of the tapes, in order to ascertain and advise counsel (1) of the number of telephone calls recorded on the tapes, (2) of the number of recorded calls in which any of the plaintiffs participated, (3) whether the tapes contained any information relevant to a defense of express or implied consent under 18 U.S.C. § 2511(2)(d), and (4) whether the tapes contained any information that would substantiate the allegations of paragraphs 30 and 33 of the complaint (which allege that defendant Michael Gassner preserved a large number of intercepted telephone calls on cassette tapes and threatened to disclose the contents of such conversations to others; that plaintiffs have had private conversations overheard and recorded; and that plaintiffs have been subjected to shock, fear, embarrassment, humiliation, and intimidation as a result of defendants' harassment and threats). Defendants' motion also requested that the court provide to all counsel transcripts of any relevant conversations identified in the requested *in camera* inspection, subject to an appropriate protective order.

On December 5, 1983, plaintiffs filed a memorandum of law opposing both of defendants' motions of November 9, 1983 ("Plaintiffs' Memorandum"), and on December 12, 1983 the court heard argument on those motions.

## I.

In support of their motion for a modification of the order of June 23, 1983, defendants argue that that order precludes defendants from discussing with or disclosing to their counsel the contents of the tape recordings presently under seal, and that without the ability to disclose to counsel the contents of the recordings, defendants

---

**2.** 18 U.S.C. § 2511(2)(d) states,

It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the *Constitution or laws of the United States* or of any State or for the purpose of committing any other injurious act.

For the legislative history of the consent provisions, see S.Rep. No. 1097, 90th Cong.2d Sess.

93–94 (1968), U.S.Code Cong. & Admin.News 1968, p. 2112.

**3.** Under the impression that the motion was unopposed, the court granted the motion on November 14, 1983, and issued on the same date an amended order permitting defendant Gassner to disclose to his counsel information contained in the tapes. On November 18, 1983, plaintiffs moved to stay the amended order and to reconsider defendants' motion to modify, which motion was granted on November 29, 1983.

will be severely impeded in developing a defense to plaintiffs' claims. Motion to Modify Order (filed Nov. 9, 1983) at 1–2.

In support of their motion for *in camera* inspection, defendants assert their belief that the tapes presently under seal contain evidence corroborative of a consent defense. Defendants' Memorandum at 2. They contend that without access to the tapes, defendants will be unable to prepare a defense and the trier of fact will be unable to fulfill its obligations to determine the scope of the asserted consent and to decide whether and to what extent the interception exceeded that consent. *Id.* at 3. Moreover, they contend, inspection should be permitted to test the allegations of paragraphs 30 and 33 of the complaint, for "[n]ecessarily implied in [those allegations] is that the contents of such intercepted communications were of such a nature as to support such 'threats' " and, if disclosed, would subject plaintiffs to "shock, fear, embarrassment, humiliation, and intimidation." *Id.* at 3–4; Complaint (filed May 26, 1983), ¶¶ 30, 33.

In summary, plaintiffs respond, first, that 18 U.S.C. § 2515 [4] prohibits any part of the tapes, or any information derived therefrom, from being received in evidence. Second, they argue that 18 U.S.C. § 2511(1)(c),[5] by making it a felony to disclose the contents of the tape recordings, prohibits the disclosure of any of the contents of any of the tape recordings, even to defense counsel in a civil action—and, indeed, even to the court or to anyone under its supervision. Plaintiffs' Memorandum at 3–7. For their interpretation of the statutory provisions, plaintiffs rely on the Supreme Court's decision in *Gelbard v. United States*, 408 U.S. 41, 48–50, 92 S.Ct. 2357, 2361–62, 33 L.Ed.2d 179 (1972).

In *Gelbard*, a grand jury witness was held in civil contempt of court under 28 U.S.C. § 1826(a) for refusing "without just cause shown to comply with an order of the court to testify." The Supreme Court held that there was "just cause" for refusing to testify where it could be shown that interrogation of the witness would be based upon information obtained through illegal interception of his communications. 408 U.S. at 51–52, 92 S.Ct. at 2362–2363. In examining the legislative history of Title III, the Court noted that the protection of privacy was the overriding Congressional concern in strictly limiting the circumstances in which wiretapping and electronic surveillance were permissible. *Gelbard, supra*, 408 U.S. at 47–50, 92 S.Ct. at 2360–2362. The evidentiary prohibition of § 2515, the Court explained, was a means to enforce the limitations upon wiretapping and electronic surveillance. *Id.* As the Senate Report put it: "The perpetrator must be denied the fruits of his unlawful actions in civil and criminal proceedings." S.Rep. No. 1097, 90th Cong., 2d Sess. 69 (1968), U.S. Code Cong. & Admin.News

---

**4.** 18 U.S.C. § 2515 states,

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

**5.** 18 U.S.C. § 2511(1) states, in pertinent part,

Except as otherwise specifically provided in this chapter any person who—

(a) willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or oral communication;

(b) willfully uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication . . .;

(c) willfully discloses, or endeavors to disclose, to any other person the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection; or

(d) willfully uses, or endeavors to use, the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection;

shall be fined not more than $10,000 or imprisoned not more than five years, or both.

1968, p. 2156, *quoted in Gelbard, supra,* 408 U.S. at 50, 92 S.Ct. at 2362.

## A.

As defendants' counsel correctly noted at oral argument, the contents of the tapes are excludable under § 2515 and their disclosure punishable under § 2511(1)(c) only if they contain recordings of illegally intercepted telephone conversations. Plaintiffs' argument thus depends for its force on the assumption that any and all interceptions and recordings of telephone conversations automatically violate the statute.

Judge Sirica made precisely this point about the assumption implicit in *Gelbard,* in denying a motion by intervenors to suppress evidence derived from wiretapping in *United States v. Liddy,* 354 F.Supp. 217, 220 (D.D.C.1973). The intervenors were not parties to the litigation, and their standing to assert their claim was questioned. *Id.* at 219 n. 1. Although the District Court's decision apparently was subsequently reversed in an unpublished order, *see United States v. Liddy,* 509 F.2d 428, 446 (D.C.Cir.1974), on grounds which are not fully explicated in published opinions and which may have been grounded on factual considerations peculiar to that case, one general observation by Judge Sirica still appears sound:

> In rendering its decision [in *Gelbard*], the Supreme Court *assumed* that the testimony sought by the Grand Jury would be within the meaning of "evidence derived" from the intercepted communications as that term is used in § 2515. The Court also *assumed* that the government interceptions were illegal.

> \*     \*     \*     \*     \*     \*

Thus, the Supreme Court in *Gelbard* disposed of the type of issue which faces us by means of assumptions and without discussion. It *assumed* that § 2515 prohibited the disclosure of information demanded from the witnesses. Here we have to decide the question [whether the interceptions were illegal]. *In addition, we cannot even assume that unlawful*

*interception occurred. That is to be decided by the jury at trial.*

354 F.Supp. at 220 (emphasis supplied). *See also Gelbard, supra,* 408 U.S. at 71, 92 S.Ct. at 2373 (Rehnquist, J., dissenting) (four Justices noting that the majority has "assume[d] ... that the Government's overhearing of these witnesses was in violation of the applicable statute"); Goldsmith, "The Supreme Court and Title III: Rewriting the Law of Electronic Surveillance," 74 J.Crim.L. & Criminology 1, 75–76 (1983) (in *Gelbard,* court made "unexplained critical assumption" which under any circumstances would be dispositive of case, in way which overlooked applicable provisions of Title III and gave lower courts no direction on how to handle procedural dilemma).

## B.

In *Gelbard,* it was the Government that was alleged to have intercepted certain communications. *Liddy,* although a criminal prosecution for conspiracy, unlawful interception of oral and wire communications, and burglary, under several provisions of the United States Code and District of Columbia Code, involved alleged interceptions by an ostensible private party. *See United States v. Liddy,* 354 F.Supp. 208, 209 (D.D.C.1972). Thus it resembles the case at bar, and Judge Sirica's discussion of §§ 2511(c) and (d) and 2515 is instructive. The construction of those sections pressed by the intervenors in *Liddy* was essentially the same as that urged by plaintiffs here: that those sections prohibit disclosure and reception into evidence under all circumstances, even for purposes of prosecuting violations of § 2511. Judge Sirica noted that to adopt that construction of §§ 2511(c) and (d) and 2515 would mean that persons responsible for assertedly unlawful interceptions could never be prosecuted: the unlawfulness of the interceptions could never be determined, because of the strictures of the evidentiary prohibition of § 2515 and of the criminalization of disclosure and use provisions of §§ 2511(c) and (d), in the very statute that purportedly

proscribed those persons' actions. 354 F.Supp. at 221.[6] That literal a reading of §§ 2511(c) and (d) and 2515 is equally paradoxical in the circumstances presented by this case.

### C.

In a civil action to recover damages under § 2520, plaintiffs must first prove that defendants violated § 2511. *Citron v. Citron,* 722 F.2d 14, 16 (2d Cir.1983) (per curiam); *Smith v. Cincinnati Post & Times-Star,* 475 F.2d 740, 741 (6th Cir. 1973) (per curiam); *Beard v. Akzona, Inc.,* 517 F.Supp. 128, 133 (E.D.Tenn.1981). If the court were to accept the position urged by plaintiffs—*i.e.,* that § 2515 prohibits the introduction of any evidence derived from the tapes—plaintiffs themselves would be seriously hampered, if not completely foreclosed, from proving their case at trial.[7]

■ Section 2515 creates difficulties because, as one court has commented, it

> is poorly drafted. Read literally, the provision is circular; it proscribes the reception into evidence (and thus the disclosure) of information the disclosure of which "would be in violation of [18 U.S.C. §§ 2510–2520]."

*Fleming v. United States,* 547 F.2d 872, 874 (5th Cir.1977) (per curiam). The circularity of the provision is easily apprehended. In order for "the contents of any wire or oral communication" (or evidence derived therefrom) to be suppressed under § 2518(10)(a)[8] pursuant to the directive of § 2515, or for their disclosure to constitute a criminal offense under § 2511(1)(c) or (d), it is necessary to show that they were obtained in violation of the provisions of Title III. In a civil action or criminal prosecution brought under Title III, however, the unlawfulness of the eavesdropping or interception is one of the ultimate issues to be determined at trial.[9] Therefore, it cannot be assumed that any interception and recording of plaintiffs' telephone conversations as may have taken place was unlawful (*i.e.,* that it did not fall within any of the exceptions to the general prohibitions of the statute, including consent[10]). Accordingly, until it can be shown that defendants have indeed violated § 2511, § 2515 cannot bar admission of the contents of the tape recordings or evidence derived therefrom, nor can §§ 2511(1)(c) and (d) make their disclosure to and use by

---

**6.** Judge Sirica's ruling that the evidentiary prohibition of § 2515 did not apply in a criminal prosecution brought under Title III was based on a careful examination of the legislative history. *United States v. Liddy, supra,* 354 F.Supp. at 221; *see also* note 11, *infra.*

The Court of Appeals apparently did not agree; however, it did not fully disclose its reasons. *See* 509 F.2d at 446. Even if the decision of the Court of Appeals for the District of Columbia on the suppression issue is good law, however, it need not control the decision of this court in the absence of controlling authority from our own Court of Appeals. *See Securities and Exchange Commission v. Shapiro,* 494 F.2d 1301, 1306 n. 2 (2d Cir.1974) (Hays, J.) ("[A]ssuming that these cases [from other circuits] still represent good law, they do not bind this court.")

**7.** The court need not determine at this time how plaintiffs' counsel would prove a violation of the statute if all evidence derived from the allegedly illegal recordings were suppressed. A problem is suggested by Rule 1002, Fed.R.Evid., the so-called "best evidence" rule, which provides in pertinent part that "[t]o prove the content of a . . . recording[,] the original . . . recording . . . is required[.]"

**8.** *See* note 12, *infra,* and accompanying text.

**9.** It should be observed that the provision is only circular in the context of prosecutions or lawsuits for illegal electronic surveillance or wiretapping brought under Title III itself, since the legality of the electronic surveillance or interception is one of the ultimate issues to be determined at trial. In criminal prosecutions or civil actions *not* brought under Title III, however, where the legality of the alleged interception or wiretapping would not be one of the ultimate issues for trial, suppression could be granted or disclosure proscribed without regard to the ultimate issues to be determined at trial. Accordingly, in the context of those prosecutions or civil actions, the provision would not be circular.

The circularity suggests, as indeed the legislative history makes explicit, that the evidentiary prohibition of § 2515 was not intended to apply to prosecutions brought under Title III itself. *See* note 11, *infra.*

**10.** *See* the various exceptions in §§ 2511(2), 2516, 2517, 2518(7) and 2520.

counsel, for the purpose of preparing a defense, a crime.[11]

### D.

Disputes about the admissibility of wiretap evidence allegedly obtained illegally are often resolved by the procedures set forth in 18 U.S.C. § 3504(a)(1), which provides, in pertinent part, that

(a) In any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, or other authority of the United States,

(1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act ....

(b) As used in this section "unlawful act" means any act [involving] the use of any electric, mechanical or other device (as defined in section 2510(5) of this title) in violation of the Constitution or laws of the United States or any regulation or standard promulgated pursuant thereto.

■ While § 3504(a)(1) speaks in the most general terms of "any trial," "a party aggrieved," and "the opponent of the claim," it would appear that its application can only be to cases in which "the opponent of the claim" is the Government or a corporation and not a private person. This is so for a simple reason: if illegal interception and recording of oral or wire communications had in fact occurred, a requirement that a private individual "affirm or deny the occurrence of the alleged unlawful act" would expose that individual to criminal liability under 18 U.S.C. § 2511, and thereby violate that individual's Fifth Amendment privilege against compelled self-incrimination. Accordingly, § 3504(a)(1) cannot be applied to resolve the issue of admissibility in the ordinary civil case brought under § 2520. *See United States v. Vielguth*, 502 F.2d 1257, 1258 & n. 3 (9th Cir. 1974) (per curiam); *In re Harris*, 383 F.Supp. 1036, 1040 (N.D.Cal.1974).

■ As it happens, one defendant (Michael Gassner) has apparently admitted intercepting and recording some of plaintiffs' telephone conversations. *See* Excerpt of Deposition of Michael Gassner at 167–170, *appended to* Plaintiffs' Memorandum. Gassner's admission does not, however, establish the illegality of the interception and recording because it cannot be determined, on the record to date, whether he may effectively invoke a statutory exception, such as consent, under 18 U.S.C. § 2511(2)(d). That issue must be resolved before the court can determine whether the contents of the intercepted telephone conversations or evidence derived from them should be denied admission at trial or otherwise prohibited from disclosure.[12]

---

**11.** The evidentiary prohibition of § 2515 was not intended to prevent the admission of unlawfully intercepted conversations against defendants who recorded conversations illegally and are charged with violating § 2511(1). In the words of the Senate Report, "such use and disclosure would be necessary in the investigation and prosecution of the illegal wiretapper himself." S.Rep. No. 1097, 90th Cong.2d Sess. 99–100 (1968), U.S.Code Cong. & Admin.News 1968, p. 2188. *See also* J. Carr, The Law of Electronic Surveillance 494, 541 (1977). A defendant charged with illegal electronic surveillance or wiretapping is not an "aggrieved person" as defined by 18 U.S.C. § 2510(11) and therefore lacks standing to invoke the suppression sanction of § 2515 through a pretrial motion to suppress under § 2518(10)(a), (for which, *see* note 12, *infra,* and accompanying text). S.Rep. No. 1097, *supra,* at 91; *United States v. Bragan,*

499 F.2d 1376, 1380 (4th Cir.1974). Plaintiffs in the instant civil case appear to have standing as "aggrieved persons" to invoke the suppression sanction after an evidentiary hearing on the legality of the interception; *but see* note 7, *supra.*

**12.** 18 U.S.C. § 2518(10)(a) provides that a pretrial motion to suppress is the appropriate vehicle for securing such a judicial determination. It states, in pertinent part:

Any aggrieved person in any trial, hearing, or proceeding in or before any court ... of the United States ... may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—

(i) the communication was unlawfully intercepted ....

### E.

■ Until both sides have had an opportunity through discovery to investigate the lawfulness *vel non* of the interceptions and recording, it is not appropriate to address questions regarding admissibility at trial of the tapes or prohibition of their disclosure. The possible inadmissibility of the tape recordings at trial is not an adequate reason to foreclose discovery of them. Rule 26(b)(1), Fed.R.Civ.P., explicitly provides that "[i]t is not ground for objection that the information sought [in discovery] will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Since disclosure of the tape recordings is not proscribed until a violation of § 2511 is shown, it follows that they are discoverable for the time being, subject perhaps to an appropriate protective order to protect the arguable privacy interests of relevant parties.

### F.

■ In any event, it may be noted that at the hearing of December 12, 1983, counsel for plaintiffs specifically refused to limit plaintiffs' claims to actual or liquidated damages under § 2520(a), electing to pursue additional claims for punitive damages under 18 U.S.C. § 2520(b), based on defendant Gassner's alleged threats of disclosure. In these circumstances, the actual contents of the tapes are clearly relevant to the efforts of defendants to resist plaintiffs' claims—indeed, only the tapes themselves can shed light on the credibility of plaintiffs' allegations of threats, harassment, humiliation, and intimidation which form the basis for the claim to punitive damages. *See* Complaint (filed May 26, 1983), ¶¶ 30, 33. To deny defendants' counsel any possibility of investigating or rebutting the allegations on which plaintiffs' claim for punitive damages is based, or of discussing the contents of the tapes with their clients in the course of preparing a defense of this lawsuit, would be to convert the allegations of the complaint into a judgment. Any such construction of the statute would be absurd on its face [13] and would be so incompatible with basic notions of fairness in adversary proceedings that it might well raise questions regarding the statute's constitutionality.

### II.

At the hearing of December 12, 1983, plaintiffs' counsel argued that an *in camera* inspection of the kind requested by defense counsel would be unacceptable. Because of the position adopted by plaintiffs' counsel and the court's determination that a protective order would adequately safeguard the asserted privacy interests of plaintiffs in the circumstances presented, no *in camera* inspection will be conducted. Defendants' counsel would be far better able than the court at this point to decide whether, in conjunction with the other facts of the case, the tape recordings contain material relevant to a defense of the alleged violation of § 2511 or to the damage claims. Section 2515 was no more de-

---

Such motion shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter.
Plaintiffs here have made no such motion.

**13.** Although the purpose of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended, 18 U.S.C. §§ 2510–2520, was to prevent and deter invasions of privacy generally, one of its specific aims was to keep the Government from using in legal proceedings evidence or information which was the fruit of illegal wiretapping or eavesdropping. No authority has been brought to the attention of the court to persuade it that the statute was intended totally to preclude the investigation of defenses in civil actions brought under § 2520. *See generally United States v. King,* 528 F.2d 68, 69 (9th Cir.1975) (per curiam) (suggesting that, on proper showing, tape recordings may be discoverable by review or copying in civil action for damages under 18 U.S.C. § 2520); *Philadelphia Resistance v. Mitchell,* 58 F.R.D. 139, 147 (E.D.Pa.1972) (Congress intended, in 18 U.S.C. § 2515, "to limit discovery in the context of criminal and not civil proceedings").

signed to keep defendants in lawsuits brought under § 2520 from defending the alleged violations of § 2511 than it was to keep the Government from prosecuting violators under § 2511.[14] Defense counsel has made a sufficient showing to have discovery of the tapes under an appropriate protective order. Accordingly, the motion for *in camera* inspection of the tape recordings, as a predicate to any order permitting discovery of the tapes, is denied.

### Conclusion

For the reasons stated above, the court's earlier orders regarding disclosure and use of the tapes and their contents are vacated and superseded by the following order:

1. The Clerk of the Court shall deliver the tapes presently in his custody under seal to the Official Court Reporter, Paul Collard, who by no later than May 4, 1984, shall have the tapes transcribed, and shall have two copies made from the original transcript. The original transcript shall be filed with the court under seal, one copy shall go to plaintiffs' counsel, and the other copy shall be retained by defendants' counsel. None of the tapes, nor any part of them, shall be duplicated. After transcription, the Official Court Reporter shall return the tapes themselves to the Clerk, who shall again place them under seal, until further order of the court.

2. Counsel of record may, upon application to the court on notice to other counsel, have an opportunity to hear the tapes from which transcripts shall have been made, at a place and time to be designated by the court under the supervision of a special master chosen jointly by the parties from the standing Panel of Special Masters appointed by the judges regularly sitting at the Hartford seat of court. In the absence of agreement of counsel on a special master to act in these circumstances, the court shall select a special master from the Panel. The time expended by the special master selected by counsel for the parties or by

the court shall be charged to the party which applies for the opportunity to hear the tapes. In addition, all counsel of record shall have an opportunity to be present at any playing of the tapes under the terms of this order.

3. The Official Court Reporter and any special master appointed hereunder shall be bound by requirements of strict confidentiality and non-disclosure of the contents of the tapes. The transcripts of the tape recordings provided to counsel shall not be duplicated, and shall not be read by any persons other than counsel of record, nor their contents disclosed by anyone to any person not a party or counsel of record.

4. At the conclusion of this action, counsel shall transmit the two copies of the transcript of the tapes to the Clerk to be kept under seal.

It is so ordered.

