**Allen David STOKES, Plaintiff–Appellee,**

v.

**CITY OF OMAHA, Douglas County, Nebraska, a Municipal Corporation, Defendant–Appellant,**

**P.J. Morgan, Mayor of the City of Omaha; Robert Wadman, Acting Chief of Omaha Police Department; Pitmon Foxall, Sr., Public Safety Director; George Strand, Acting Personnel Director, Defendants.**

No. 93–2288.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 17, 1994.

Decided May 5, 1994.

James E. Fellows, Omaha, NE, argued (Herbert M. Fitle and Alan M. Thelen, on the brief), for appellant.

Thomas F. Dowd, Omaha, NE, argued, for appellee.

Before McMILLIAN, WOLLMAN and MAGILL, Circuit Judges.

WOLLMAN, Circuit Judge.

The City of Omaha ("the City") appeals from the district court's judgment entered following a jury verdict in the amount of $2,700.00 in favor of Allen David Stokes on his claim that the City delayed his promotion to police sergeant because of his age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634. The City argues that the district court erred by denying its motion for judgment as a matter of law because the delay in Stokes's promotion was necessary for the City to comply with its affirmative action plan and federal consent decrees, by admitting into evidence under the residual hearsay exception an affidavit of an unavailable witness, and by awarding Stokes attorney's fees without evidence of the hours expended or the hourly rate and without permitting the City to conduct discovery. We reverse the district court's judgment and vacate the award of attorney's fees.

I.

In 1987, the City solicited applications from police officers seeking a promotion to sergeant. Having served as an Omaha police officer since January 1983, Stokes, who was then fifty years old, was eligible to apply. He submitted an application and took the necessary examinations. Upon completion of the examination process, the City's personnel department compiled a promotion eligibility list by ranking the applicants in order of their scores, with the best scores receiving the lowest rankings. Stokes ranked tenth on the list that was compiled in March 1988. The collective bargaining agreement between

the City and its police officers required all sergeant promotions during the next two years to be made from the list.

When a sergeant position became vacant, the City's public safety director requested a list of eligible applicants from the City's personnel department. The Omaha Municipal Code required the personnel department to provide to the public safety director the names of the three highest-ranked applicants. If more than one position was vacant, the personnel department provided two names for each vacancy. Occasionally, the personnel department submitted the name of a minority or female applicant who was not at the top of the eligibility list. The names of the lower-ranked applicants were submitted pursuant to either the City's affirmative action plan or two federal court consent decrees that were in effect during the period in which promotions were made from the March 1988 list. The Midwest Guardians consent decree required that each rank be 9.5 percent black. *See United States v. City of Omaha*, Nos. 80–0–631, 79–0–528 (D.Neb. Oct. 23, 1980). The Latino Peace Officers consent decree required that 3.3 percent of the police officers be Hispanic and the percentage of Hispanics in the higher ranks be proportionate to that contained in the class of employees eligible for promotion. *See Latino Peace Officers Ass'n v. Calinger*, No. 86–0–525 (D.Neb. Jan. 3, 1989).

On July 1, 1989, the City promoted three persons to the rank of sergeant. Although Stokes was the third highest ranked applicant, he was not promoted. He filed this suit on October 6, 1989, and was promoted to sergeant on January 22, 1990.

At trial, Stokes argued that the City had discriminated against him on the basis of his age by promoting a younger, lower-ranked applicant ahead of him. The City contended that the lower-ranked applicant had been promoted ahead of Stokes to comply with the requirements of the Midwest Guardians consent decree. The district court entered judgment in favor of Stokes following a jury verdict, and the City now appeals.

## II.

■ The City appeals from the denial of its motion for judgment as a matter of law. We review de novo the denial of a motion for judgment as a matter of law. *Kansas City Power & Light Co. v. Ford Motor Credit Co.*, 995 F.2d 1422, 1426 (8th Cir.1993). When ruling on the City's motion for judgment as a matter of law, we must (1) consider the evidence in the light most favorable to Stokes, (2) assume any conflicts in the evidence were resolved in Stokes's favor, (3) assume as proved all facts that Stokes's evidence tended to prove, and (4) give Stokes the benefit of all favorable inferences that can be reasonably drawn from the evidence. *TEC Floor Corp. v. Wal–Mart Stores, Inc.*, 4 F.3d 599, 601 (8th Cir.1993) (quoting *Western Am., Inc. v. Aetna Cas. & Sur. Co.*, 915 F.2d 1181, 1183 (8th Cir.1990)). If no reasonable juror could find against the City based upon the evidence construed in Stokes's favor, then we will reverse the district court's denial of the City's motion for judgment as a matter of law. *First Dakota Nat'l Bank v. St. Paul Fire & Marine Ins. Co.*, 2 F.3d 801, 811 (8th Cir.1993).

■ Stokes alleges that the City delayed promoting him to sergeant because of his age. Pursuant to the Age Discrimination in Employment Act, it is unlawful "to fail or refuse to hire or to discharge any individual [who is at least forty years of age] or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may prove age discrimination using direct evidence or indirectly using the order of proof and presumptions set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See, e.g., Beshears v. Asbill*, 930 F.2d 1348, 1353 (8th Cir.1991) (quoting *Blake v. J.C. Penney Co.*, 894 F.2d 274, 278 (8th Cir.1990)). In an appeal from a jury verdict, however, we need not consider the *McDonnell Douglas* order of proof and presumptions. *Barber v. American Airlines, Inc.*, 791 F.2d 658, 660 (8th Cir.), *cert. denied*, 479 U.S. 885, 107 S.Ct. 278, 93 L.Ed.2d 254 (1986). We "simply study the record with a view to determin-

ing whether the evidence is sufficient to support whatever finding was made at trial." *Id.* If the plaintiff presents direct evidence of age discrimination, the *McDonnell Douglas* analysis is inapplicable. *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985). To rebut direct evidence of discrimination, the defendant must prove that it would have made the same decision even if it had not taken into account age. *Id.*

We first consider whether Stokes's indirect evidence of age discrimination is sufficient to support the jury's verdict. In July 1989, three sergeant positions were vacant, and nine applicants, including Stokes, were interviewed. The public safety director had delegated to the police chief, Robert Wadman, the responsibility for interviewing applicants for promotion to sergeant. After interviewing all of the candidates, Wadman made a recommendation to the public safety director, who then made the decision. Upon completion of the interview process, the applicants ranked eighth, ninth, and fifty-second were promoted. Stokes, who was ranked tenth, was not promoted because the promotion of the fifty-second ranked applicant was necessary to cure an underutilization of one black sergeant and to bring the City into compliance with the terms of the Midwest Guardians consent decree.

Stokes is not the only high-ranking applicant whose promotion was delayed by the City's compliance with its affirmative action plan or the consent decrees. Throughout the period in which promotions were made from the March 1988 eligibility list, the City promoted lower-ranked black or Hispanic applicants ahead of higher-ranked white applicants to cure underutilizations of minority sergeants. In March 1988, the applicants ranked first through fifth as well as the applicant ranked nineteenth were promoted. The promotion of the nineteenth-ranked applicant, a black male, cured an underutilization of black sergeants pursuant to the requirements of the Midwest Guardians consent decree. Approximately six months later, in September 1988, the City promoted to sergeant the applicants ranked sixth, twenty-fifth, and fortieth. At the time that the

twenty-fifth ranked applicant, who was Hispanic, was promoted, the Latino Peace Officers consent decree was not in effect, but the City's affirmative action plan required the promotion. Promoting the fortieth-ranked applicant, a black female, was in compliance with the Midwest Guardians consent decree. Shortly thereafter, the City promoted the seventh-ranked applicant. In January 1989, the City promoted the applicant ranked forty-fourth, a black male, to cure an underutilization of black sergeants. By May 1989, the Latino Peace Officers consent decree was in effect, and the City attempted to comply with its terms by promoting the applicant ranked fifty-third, a Hispanic male. In July 1989, the City promoted the applicants ranked eighth and ninth as well as the fifty-second ranked applicant, who was promoted to cure an underutilization of one black sergeant. Stokes was promoted to sergeant in January 1990. On March 1, 1990, the City promoted the eleventh, twelfth, and thirty-ninth ranked applicants. The promotion of the thirty-ninth ranked applicant, who was Hispanic, cured an underutilization of Hispanic sergeants.

Stokes does not dispute that the promotion of the lower-ranked applicant ahead of him cured an underutilization of black sergeants. Rather, he argues that the City's explanation for delaying his promotion, complying with the Midwest Guardians consent decree, was pretextual. He contends that the City's proffered nondiscriminatory reason was pretextual because the City did not consistently comply with the terms of the consent decrees. The City promoted the seventh-ranked applicant, who was white, when there was an underutilization of one black sergeant. Two months later, however, the City promoted a black applicant and cured the underutilization. At the end of January 1990 when Stokes was promoted, there was an underutilization of one Hispanic sergeant. Once again, however, the underutilization was short-lived. At the beginning of March, the City promoted a Hispanic applicant. Although two of the nineteen promotions from the March 1988 eligibility list did not promptly cure underutilizations of minority ser-

geants,[1] two brief delays in complying with the consent decrees are insufficient to establish that the City's prompt compliance in a third case was a pretext for age discrimination. The delays may have been contrary to the consent decrees, but they did not alter the requirements of the consent decrees. Thus, because on July 1, 1989, there was an underutilization of one black sergeant, the Midwest Guardians consent decree required that the City promote the fifty-second ranked officer ahead of Stokes. Accordingly, we find Stokes's argument that the City's actions in compliance with the mandates of the Midwest Guardians consent decree were pretextual to be without merit.

■ Having decided that Stokes failed to present sufficient indirect evidence to support a finding of age discrimination, we must consider whether he presented sufficient direct evidence to support the jury's verdict. After executing an affidavit, but before trial, Jack Swanson, a former deputy chief of police, died. His two-paragraph affidavit states that during the period 1982 to 1989, Swanson was present at various staff meetings in which Robert Wadman, the chief of police, mentioned that "his philosophy was to weed out the old employees since they were stagnate [sic] in their thinking and promote the younger employees who were more in tune thinking and promote the younger employees who were more in tune with his philosophy." The district court admitted his affidavit under the residual exception to the hearsay rule. *See* Fed.R.Evid. 804(b)(5).

■ We review the district court's determination that evidence is admissible under the residual exception to the hearsay rule for abuse of discretion. *United States v. Grooms*, 978 F.2d 425, 427 (8th Cir.1992). A statement is admissible under Federal Rule of Evidence 804(b)(5) if the declarant is unavailable and the statement (1) has circumstantial guarantees of trustworthiness equivalent to the first four exceptions in Rule 804(b), (2) is offered as evidence of a material

fact, (3) is more probative on the point for which it is offered than any other evidence that the proponent reasonably can procure, and (4) serves the interests of justice and the purposes of the federal rules. *United States v. Gaines*, 969 F.2d 692, 697 (8th Cir.1992). The proponent of the evidence must give notice to his adversary. *Id.*

After reviewing the contents of and circumstances surrounding Swanson's affidavit, we do not find that it falls within the rare and exceptional circumstances required by our cases applying Rule 804(b)(5). *See Gaines*, 969 F.2d at 697 ("Rule 804(b)(5) is to be used rarely, and only in exceptional circumstances.") (internal quotations omitted); *United States v. Woolbright*, 831 F.2d 1390, 1396 (8th Cir.1987) (stating that the requirements of Rule 804(b)(5) are to be strictly construed). Although the district court warned the jury to consider the affidavit very carefully because Swanson was not available for cross examination, a precautionary instruction, under the facts of this case, does not permit the admission of a conclusory, unsubstantiated hearsay opinion. Swanson's death, although untimely, was not unexpected. If Stokes had believed that Swanson's testimony was important to his case, then he should have deposed Swanson. Moreover, during oral argument Stokes's attorney acknowledged that Wadman would have been available to testify at trial had Stokes decided to call him as a witness.

Swanson related, in a rambling one-sentence paragraph, his perception of Wadman's philosophy concerning older workers during a seven-year period. The affidavit does not indicate the context, times, or locations of Wadman's alleged statements. Because the City did not have the opportunity to cross examine Swanson and the affidavit contains no information to substantiate Swanson's belief that Wadman wanted to promote younger employees, the probative value of the brief affidavit is slight. Although the information in the affidavit was given under oath, it lacks the sufficient guarantees of trustworthiness

---

**1.** Stokes also argues that the City did not always follow the requirements of the consent decrees in connection with lieutenant promotions. According to the transcript, however, there may have been only one such instance. Moreover, a delay

in curing an underutilization of minority lieutenants does not establish that promptly curing an underutilization of black sergeants was a pretext for age discrimination.

required by Rule 804(b)(5). *See United States v. Fernandez,* 892 F.2d 976, 981 (11th Cir.1989) ("An oath alone, however, is an inadequate safeguard to meet the requirement of Rule 804(b)(5) that the statement have 'equivalent circumstantial guarantees of trustworthiness.' "), *cert. dismissed,* 495 U.S. 944, 110 S.Ct. 2201, 109 L.Ed.2d 527 (1990). The admission of the affidavit, therefore, was erroneous.

■ When Wadman interviewed Stokes in July 1989, he asked Stokes his age, and Stokes responded that he was fifty-two years old. Based upon the facts of this case, an isolated question regarding Stokes's age, although improper, is not sufficient to support a finding that the City delayed Stokes's promotion because of his age. *See Smith v. Goodyear Tire & Rubber Co.,* 895 F.2d 467, 472 (8th Cir.1990) (stating that a single reference to age is insufficient evidence of an intent to discriminate); *see also Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1438 (9th Cir.1990) (holding that employer's stray comment that applicant was promoted because he was "a bright, intelligent, knowledgeable young man" is insufficient to support a finding of age discrimination); *Gagne v. Northwestern Nat'l Ins. Co.,* 881 F.2d 309, 314 (6th Cir.1989) (finding supervisor's isolated comment that he "needed younger blood" did not create a material factual issue on age discrimination claim). Accordingly, we find that Stokes presented no admissible direct evidence of age discrimination sufficient to support the jury's verdict.

The judgment is reversed, the order granting attorney's fees is vacated, and the case is remanded to the district court for entry of an order dismissing the complaint.