James DESILETS, et al.,
Plaintiffs, Appellees,

v.

WAL–MART STORES, INC.,
Defendant, Appellant.

No. 98–1049.

United States Court of Appeals,
First Circuit.

Heard June 3, 1998.

Decided March 29, 1999.

E. Tupper Kinder, with whom Nelson, Kinder, Mosseau & Gordon, P.C. was on brief, for appellant.

Charles L. Powell, with whom Shillen & Gray, P.A. was on brief, for appellees.

Before BOUDIN, Circuit Judge, KEETON * and McAULIFFE,** District Judges.

McAULIFFE, District Judge.

The appellant, Wal–Mart Stores, Inc., used hidden recording devices to tape its employees' private conversations. Plaintiffs, four former employees whose conversations were recorded, sued. Finding that Wal–Mart violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Act"), 18 U.S.C. § 2520, a jury awarded each plaintiff $20,000. In addition, the district judge awarded plaintiffs their reasonable attorneys' fees and costs.

Since the central issue is one of statutory construction, we confine the description of what happened to the barest outline. The plaintiffs were night-shift employees of a Wal–Mart store located in Claremont, New Hampshire. On at least several different days in August 1995,some of their conversations were secretly recorded on voice-activated tape recorders, and interceptions and playbacks took place on various days. Without going into detail, there was enough involvement by store management that Wal–Mart does not contest its responsibility for what occurred. When the events were discovered, the present suit was brought, resulting in the awards just described.

On appeal Wal–Mart assigns three errors. First it says the judgment below should have been limited, by operation of the Act, to $10,000 per plaintiff. Next it argues the trial court erred by instructing the jury that listening to the recordings could constitute prohibited "use" of the intercepted conversations within the meaning of the Act. Finally, Wal–Mart claims that the attorneys' fees award was excessive in light of plaintiffs' failure to secure

one of the major objectives of their suit—punitive damages.

## DISCUSSION

### Statutory Damages

Section 2520 of Title 18 of the United States Code creates a civil cause of action entitling any person "whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of [the Act]" to "recover from the person or entity which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a). Appropriate relief for the violations at issue here can include actual damages, statutory damages in lieu of actual damages, punitive damages if warranted, and recovery of reasonable attorneys' fees and costs. 18 U.S.C. § 2520(b).

In this case plaintiffs claimed no actual damages but instead sought liquidated statutory damages, punitive damages, and attorneys' fees. Statutory damages consist of:

> ... whichever is the greater of $100 a day for each day of violation or $10,000.

18 U.S.C. § 2520(c)(2)(B).

The jury awarded each plaintiff $10,000 for Wal–Mart's violation of the Act in unlawfully intercepting their private conversations (on fewer than 100 days), and an additional $10,000 for Wal–Mart's violating the Act by intentionally using the intercepted communications (on fewer than 100 days).[1] Wal–Mart challenges the total award of $20,000 per plaintiff on grounds that it represents an impermissible double recovery of the liquidated damages provided for in Section 2520(c)(2)(B). We agree.

Appellate review of issues involving statutory interpretation is de novo.

---

\* Of the District of Massachusetts, sitting by designation.

\*\* Of the District of New Hampshire, sitting by designation.

1. The jury also awarded each plaintiff $1,000 for the interception and $1,000 for Wal-

Mart's use of those conversations under New Hampshire's wiretapping and eavesdropping statute. N.H.Rev.Stat. Ann. §§ 1–11 (1986 & Supp.1997). Those damages were subsumed in the higher federal award.

*See Matter of Metlife Capital Corp.*, 132 F.3d 818, 820 (1st Cir.1997), *cert. denied sub nom. Bunker Group v. United States*, —— U.S. ——, 118 S.Ct. 2367, 141 L.Ed.2d 736 (1998). Our approach to statutory construction begins with the actual language of the provision; we give the text its ordinary meaning. *In re Bajgar*, 104 F.3d 495, 497 (1st Cir.1997). When the text's meaning is plain, courts are obligated to enforce the provision as written. *United States v. Rivera*, 131 F.3d 222, 224 (1st Cir.1997); *see also Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985); *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917).

■ While recognizing that disparate results are revealed in published decisions, we interpret the language chosen by Congress to describe recoverable statutory damages, available when no actual damages are suffered or claimed, as straightforward and clear. First, the phrase "$100 a day for each day of violation," plainly reveals Congress' intent to link liquidated damages not to the number of discrete violations that might occur on a given day, but to the number of *days* on which the Act is violated. So, it is irrelevant in calculating statutory damages that 100 violations of the Act might occur on one day, 50 on a second, and only 2 on a third day. For *each day* on which any violation occurs, or multiple violations occur, the liquidated sum of $100 must be paid by the violator. *See, e.g., Shaver v. Shaver*, 799 F.Supp. 576 (E.D.N.C.1992); *Spetalieri v. Kavanaugh*, 36 F.Supp.2d 92 (N.D.N.Y. 1998).

■ No doubt the provision anticipates a range of possible circumstances, extending from one violation on one day to scores of distinct violations on another day, and even a multitude of days on which violations occur, perhaps extending over many months. Whatever the circumstances, however, if violations occur on 100 days *or less*, then the minimum statutory award of $10,000 must be paid. If, on the other hand, violations occur on more than 100 days, then of course the higher statutory award of $100 per day must be paid.

■ Neither the number of discrete violations of the Act committed by the "person or entity engaged in that violation" on any one day, nor, in our view, the different *types* of violations committed on any one day (interception, or disclosure, or intentional use), are relevant in calculating the liquidated damages to be awarded under Section 2520(c)(2)(B). While each type of violation "amounts to a separate injury prohibited by statute," *Williams v. Poulos*, 11 F.3d 271, 290 (1st Cir.1993), the statute makes no apparent distinction among the types of separate injuries at issue here for purposes of assessing liquidated damages. Certainly, each interception separately injures a victim, as does each disclosure, and each intentional use of intercepted conversations. But the liquidated damages provision describes only one inclusive method for calculating damages. So, whether multiple violations occurring on a particular day involve, say, ten similar interceptions, or five interceptions and five disclosures, or some other mix of type or number, the facts pertinent to calculating statutory damages in lieu of actual damages under Section 2520(c)(2)(B) remain the same: the number of *days* on which any violation occurred, and whether that number is equal to or less than, or greater than, 100.

The same approach was taken by the Eighth Circuit in *Bess v. Bess*, 929 F.2d 1332 (8th Cir.1991). In that case, the plaintiff sued her estranged husband under the Act for unlawfully intercepting, disclosing, and using the contents of her private telephone conversations, which he obtained by attaching a hidden tape recorder to the basement telephone line in her house. At trial plaintiff introduced twelve separate tapes of her intercepted calls. Each tape contained an average of two and one-half intercepted conversations, and each tape represented one day of interception. Plaintiff also proved that

her estranged husband intentionally used the content of her intercepted conversations during their subsequent divorce proceeding. The trial court awarded $100 for each day on which a violation occurred (on average, two and one-half distinct interception violations occurred on each of the twelve days) for a total of $1,200. (The statutory minimum was $1,000 at the time; it was increased to $10,000 by Congress in 1986.[2])

The Court of Appeals affirmed the award, but only after increasing it to account for defendant's intentional use of the intercepted information during the couple's divorce proceeding:

> [Plaintiff] raises one meritorious claim with respect to the number of violations. The record reveals that on July 24, 1985, during the Bess' divorce proceeding, [defendant] recited facts obtained from the intercepted conversations in an attempt to establish marital misconduct by [plaintiff]. This use of the intercepted contents represents additional prohibited conduct in violation of 18 U.S.C. § 2511. *Cf. Rodgers v. Wood,* 910 F.2d 444, 446, 449 n. 3 (7th Cir.1990) (plaintiffs sought damages based on disclosure of intercepted conversations). We therefore determine that [plaintiff] is entitled to an additional $100 in statutory damages.[1]
>
> [1] [Plaintiff] makes no argument that the statute entitled her to more than the $100 per day figure.

*Bess,* 929 F.2d at 1334; *see also Campiti v. Walonis,* 467 F.Supp. 464 (D.Mass.1979) (double recovery for interception and disclosure not permitted).

We are aware of cases in which multiple recovery of the minimum statutory amount has been allowed, on grounds that the Act was violated on different days in different ways—e.g., interception and disclosure.

In *Menda Biton v. Menda,* 812 F.Supp. 283 (D.P.R.1993), for example, the district court determined that plaintiff was entitled to recover from defendants $10,000 for the unlawful recording of his conversations and an additional $10,000 for their disclosure. In the same vein, in *Romano v. Terdik,* 939 F.Supp. 144, 150 (D.Conn. 1996), a district court observed, in dicta, that "[i]t is well established that ... $10,000 may be awarded for interception and $10,000 may be awarded for disclosure because they are considered two separate violations of Section 2511." (citations omitted). And, it appears at least implicit in *Rodgers v. Wood,* 910 F.2d 444, 446 (7th Cir.1990), that a district court may have allowed double recovery of the statutory amount based on the fact that different types of violations occurred. *See also Dorris v. Absher,* 959 F.Supp. 813, 819 n. 9 (M.D.Tenn.1997).

*Menda Biton,* and courts expressing similar views, seem to rely primarily, and we think wrongly, on *Bess v. Bess, supra,* as supporting multiple recovery. The *Bess* court did not hold that interception and disclosure by the same person warrants multiple liquidated awards under the Act. If the opinion in *Bess* supports any view, it supports a view consistent with our own interpretation of the damages provision: *that the number of days of violation determines the amount of a liquidated damages award, and not the number of discrete violations on any given day, nor the different types of violations that might occur.* While the appellant in *Bess* apparently did not argue that the statute entitled her to more than an additional $100 for the additional day of violation (disclosure rather than interception), the Eighth Circuit nevertheless deemed it appropriate under the statute to award only an additional $100, and not an additional $1,000 minimum amount, even though the violation on that additional day was of a different kind.[3]

---

2. Electronic Communications Privacy Act of 1986, Pub.L. No. 99–508, 100 Stat. 1853 (1986).

3. *Menda Biton* and *Romano* also invoke *Deal v. Spears,* 780 F.Supp. 618, 624 (W.D.Ark. 1991), *aff'd,* 980 F.2d 1153 (8th Cir.1992), as supporting authority. *Menda Biton* cites the

The Act does protect different values by prohibiting not only interception, but intentional use and disclosure of intercepted conversations as well. And while a plausible argument can be made that providing separate minimum damage awards for each *type* of violation would better serve the Act's purposes, that is an argument that must be presented to Congress. In deciding this case, we are satisfied that Congress considered and struck a balance among important but countervailing policies when it chose to fix liquidated damages according to the number of days on which the Act is violated, rather than on some other basis. The statute, as written, does not explicitly, or implicitly for that matter, permit recovery of multiple minimum statutory damages awards based on different types of violation. Had Congress so intended it could easily have described recoverable liquidated damages differently, e.g., "for each distinct type of violation (interception, disclosure, or use), the greater of $100 a day for each day of violation or $10,000."

In any event, because we think the text of the statute is reasonably clear, we cannot graft upon it a remedy that to some might seem to be good policy, but to others might seem a disproportionate and burdensome civil sanction for violations that result in no actual damage. Because we conclude that multiple recovery of the liquidated damage amount, based on different violation types, is not available, we need not address Wal-Mart's argument that merely listening to tapes of unlawfully intercepted conversations does not constitute an "intentional use" within the meaning of the Act. *See, e.g., Thompson v. Dulaney,* 838 F.Supp. 1535, 1547 (D.Utah 1993) (listening to tapes of intercepted conversations does constitute illegal use.)

Accordingly, the judgment below must be vacated and the damages award reduced to $10,000, the statutory minimum, for each plaintiff.

### Attorneys' Fees

 Wal-Mart's remaining contention on appeal is that the district court erred when it declined to reduce the award of attorneys' fees and costs to account for plaintiffs' lack of success in recovering punitive damages. We review a fee award with deference, reversing only where a mistake of law or abuse of discretion has occurred. *See Coutin v. Young & Rubicam Puerto Rico,* 124 F.3d 331, 336 (1st Cir.1997). We do, however, require the trial court to provide an explanation sufficient to permit appellate review. *Id.* "The explanation need not be painstaking, and, sometimes, it may even appear by implication, but at a bare minimum, the order awarding fees, read against the backdrop of the record as a whole, must expose the district court's thought process and show the method and manner underlying its decisional calculus." *Id.* at 337.

Plaintiffs moved, pursuant to 18 U.S.C. § 2520(b)(3) and N.H.Rev.Stat. § 570-A:11(c), for awards of attorneys' fees and costs, which the trial judge granted (after making modest adjustments). The court rejected Wal-Mart's request to reduce the entire fee award by 50% to reflect plaintiffs' unsuccessful punitive damages claim, or plaintiff Desilets' unsuccessful claim for

district court opinion while *Romano* references the Eighth Circuit's opinion in the same case, *Deal v. Spears,* 980 F.2d at 1156 n. 5. We think *Deal* is distinguishable. In that case, the statutory minimum was awarded separately and individually against husband and wife owners of a small business: $10,000 against the husband, Newell, for intercepting private employee communications and $10,000 against the wife, Juanita, separately, for disclosing the content of the conversations intercepted by her husband. Juanita argued in the district court that she was not liable because she did not take an active role in recording the conversations, but the court noted that she was *independently* liable for her own actions in intentionally *disclosing* the existence and content of two tapes: "Juanita Spears' liability ... is equally as clear as that of Newell Spears." *Id.* Newell, it appears, was assessed only for intercepting; Juanita only for disclosing. The Eighth Circuit later noted that "none of the parties appeals the quantum of statutory damages awarded." *Id.*

constructive discharge, and Wal–Mart objects.

We have previously recognized that the result obtained in a lawsuit is a preeminent consideration in the fee-adjustment process. *Coutin,* 124 F.3d at 338. We have also noted that the process is made more difficult when the plaintiff's lack of success was not in the failure of a severable claim but in the nature of "a scanty damage award or a shortfall in other relief." *Id.* In that regard, we have stated that the failure to recover punitive damages is not a "failed claim," but a "categor[y] of relief" denied by the jury. *Id.* at 340.

Wal–Mart acknowledges the difference, but nevertheless urges us not only to treat the unsuccessful punitive damages request as a failed claim, but to treat it as the only claim. Wal–Mart says plaintiffs could have recovered the minimum statutory damages on summary judgment, without the necessity of trial, because it admitted in its answer that the unlawful interceptions occurred. So, the argument goes, plaintiffs necessarily proceeded to trial solely to recover punitive damages. We are not persuaded.

In its pretrial statement, Wal–Mart declared its position to be that the employees who taped the conversations were not authorized to do so, that plaintiffs did not have a reasonable expectation of privacy in the intercepted conversations, and that plaintiffs were not entitled to any damages at all. Plaintiffs proceeded to trial to establish more than their claim for punitive damages.

We note that the trial judge seems to have treated the punitive damages issue as a failed claim, but still declined to reduce the award, reasoning that:

the doctrine of interrelatedness, which holds that where losing claims include a common core of facts or were based on related legal theories linking them to the successful claim recovery may be had for all claims [citations omitted], here serves to require rejection of defen-

dant's contention that there should be a fifty percent reduction for plaintiffs' lack of success on the punitive damage and/or constructive discharge claims.

The record supports the district judge's assessment, and his reasoning is equally pertinent if the lack of success on punitive damages is more correctly viewed as a category of relief denied, rather than as a failed claim. Of course "the decision as to how to separate the wheat from the chaff in a fees contest, within broad limits, is a matter for the district court's discretion.'" *Lipsett v. Blanco,* 975 F.2d 934, 941 (1st Cir.1992) (quoting *United States v. Metropolitan Dist. Comm'n,* 847 F.2d 12, 17 (1st Cir.1988)). We find no abuse of discretion here.

On remand the judgment shall be amended to reduce the liquidated damage award to each plaintiff to $10,000. The award of attorneys' fees and costs is affirmed.

***Affirmed in part, reversed in part and remanded.***