**DIRECTV, INC., Plaintiff,**

v.

**Henry GRIFFIN, Defendant.**

**No. 603CV6660RL22KRS.**

United States District Court, M.D. Florida, Orlando Division.

Oct. 31, 2003.

James A. Boatman, Jr., Viktoria Collins, Stump, Storey, Callahan & Dietrich, P.A., Orlando, FL, for Directv, Inc., plaintiff.

## ORDER

CONWAY, District Judge.

## I. INTRODUCTION

This cause comes before the Court for consideration of the Plaintiff's, Directv, Inc. (hereinafter "Direct Television"), Second Amended Motion for Final Default Judgment Against Defendant Henry Griffin (Doc. No. 17, filed Sept. 25, 2003). An evidentiary hearing was held on Monday, October 27, 2003. Having reviewed the motion, the memorandum, and the evidence adduced at the evidentiary hearing, the Court **GRANTS** the Plaintiff's Second Amended Motion for Final Default Judgment Against Defendant Henry Griffin (Doc. No. 17).

## II. BACKGROUND

The Plaintiff, Direct Television, is a California corporation with its principal place of business located in the State of California.[1] At all relevant times hereto, the Defendant was a resident of the Middle District of Florida.[2] This is a civil action brought pursuant to the Federal Communications Act of 1934, 47 U.S.C. § 605, and the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1986, and the Communications Assistance for Law Enforcement Act of 1994, 18 U.S.C. §§ 2510–22 ("the Wiretap Act").[3]

As its name suggests, Direct Television is in the business of providing television programming to millions of subscribers in the United States through a direct broadcast satellite system.[4] In order to prevent unauthorized and unpaid viewing of its programming, Direct Television encrypts (scrambles) its satellite transmissions and

1. *See* Complaint for Compensatory, Statutory and Other Damages, and for Injunctive Relief (Doc. No. 2), ¶ 17 at 5–6.

2. *See id.,* ¶ 18 at 6.

3. *See generally id.*

4. *See id.,* ¶ 2 at 1–2.

employs conditional access technology.[5] Conditional access technology consists of "access cards" which, upon activation by Direct Television, decrypts (unscrambles) satellite transmissions, permitting subscribers of Direct Television to clearly view its television programming.[6]

According to the Complaint, despite its elaborate security measures, several companies are marketing illegally modified access cards and other devices ("pirate access devices") that permit the viewing of Direct Television's satellite transmissions without authorization by or payment to Direct Television.[7] Apparently, many of these companies employ Fulfillment Plus, a mail shipping facility located in Central California, to transact their business.[8] For this reason, on or about May 25, 2001, Direct Television began executing Writs of Seizure at Fulfillment Plus securing sales records, shipping records, e-mail communications, credit card receipts, and other records evidencing the sale and purchase of pirate access devices.[9]

The Plaintiff alleges that the aforementioned Writs of Seizure produced evidence indicating that the Defendant purchased pirate access devices.[10] In that connection, the Complaint avers that Griffin ordered a "White Viper Programmer" on April 10, 2001, and a "Terminator T–5 Typhoon Loader/Unlooper" on May 23, 2001.[11] Griffin allegedly received his orders at his address in Apopka, Florida via the United States Postal Service or another commercial mail carrier.[12]

According to testimony proffered at the evidentiary hearing, the sole function of a "White Viper Programmer" and a "Terminator T–5 Typhoon Loader/Unlooper" is to circumvent Direct Television access controls. By circumventing access controls, a viewer can obtain paid Direct Television products, including but not limited to pay per view and premium channels, without paying for them.

Based on the foregoing information, the Plaintiff filed the instant three count lawsuit against the Defendant.[13] Count I of the Complaint alleges that the Defendant received and/or assisted others in receiving Direct Television's satellite signals without authorization, in violation of 47 U.S.C. § 605(a).[14] Count II alleges that the Defendant intentionally intercepted, endeavored to intercept, or procured other persons to intercept or endeavor to intercept Direct Television's electronic communications without authorization, in violation of 18 U.S.C. 2511(1)(a).[15] Finally, Count III alleges that the Defendant manufactured, assembled, distributed, sold, and/or possessed pirate access devices, knowing or having reason to know that the design of such devices renders them primarily useful for surreptitiously intercepting satellite transmissions in violation of 18 U.S.C. § 2512(1)(b).[16]

In this Court's July 8, 2003 Order entered in *DIRECTV, Inc. v. Cardona*, 275 F.Supp.2d 1357 (M.D.Fla.2003), Count III of the Plaintiff's Complaint was dismissed.[17] The Court found that it failed to

---

**5.** *See id.,* ¶ 4 at 2.

**6.** *See id.*

**7.** *See id.,* ¶¶ 14, 16 & 18 at 4–6.

**8.** *See id.,* ¶ 16 at 5.

**9.** *See id.*

**10.** *See id.,* ¶ 21 at 7.

**11.** *Id.*

**12.** *See id.*

**13.** *See generally id.*

**14.** *See id.,* ¶¶ 28–31 at 9–10.

**15.** *See id.,* ¶¶ 32–35 at 10–11.

**16.** *See id.,* ¶¶ 36–39 at 11–12.

**17.** *See generally* Doc. No. 11.

state a claim upon which relief can be granted because 18 U.S.C. § 2512(1)(b) does not provide for a private right of action.[18]

On March 5, 2003, Direct Television effected service upon the Defendant.[19] Since that time, the Defendant has failed to plead or otherwise defend this action.[20] Accordingly, on April 28, 2003, Direct Television moved the Clerk of the United States District Court for the Middle District of Florida to enter a default.[21] The Clerk entered a default on the following day.[22]

The Defendant now moves this Court to enter a final default judgment against the Defendant in accordance with Federal Rule of Civil Procedure 55 for failing to plead or otherwise defend this action.[23]

## III. STANDARD OF REVIEW

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend ... and that fact is made to appear by affidavit ... the clerk *shall* enter the party's default." Fed.R.Civ.P. 55(a) (emphasis added). Thereafter, a judgment by default *may* be entered by the court. *See id.*

In determining whether or not to enter a default judgment, a court should consider (1) the amount in controversy; (2) whether material issues of fact or issues of substantial public importance exist; (3) whether the default is largely technical or substantive in nature; (4) whether the plaintiff has been substantially prejudiced by the delay involved; and (5) whether the grounds for default are clearly established

or are in doubt. 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure,* § 2685 at 32–36 (3d ed. 1998) ("Wright & Miller") (internal citations omitted). "Furthermore, the court may consider how harsh an effect a default might have; or whether the default was caused by a good-faith mistake or by excusable or inexcusable neglect on the part of the defendant." *Id.* at 36–38 (internal citations omitted).

When "arriving at the judgment amount involves nothing more than arithmetic— the making of computations which may be figured from the record—a default judgment can be entered without a hearing of any kind." *HMG Property Investors, Inc. v. Parque Indus. Rio Canas, Inc.,* 847 F.2d 908, 919 (1st Cir.1988) (citing *Pope v. United States,* 323 U.S. 1, 65 S.Ct. 16, 89 L.Ed. 3 (1944)); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2nd Cir. 1997) ("We have held that under Rule 55(b)(2) it [is] not necessary for the District Court to hold a hearing as long as it ensured that there was a basis for the damages specified in the default judgment") (internal citations and quotations omitted); *James v. Frame (In re Frame),* 6 F.3d 307, 309–11 (5th Cir.1993) (accord); *United States v. Ford 250 Pickup 1990,* 980 F.2d 1242, 1246 (8th Cir.1992) ("Federal Rule of Civil Procedure 55(b)(2) requires a hearing only if the court deems it necessary and proper to enable the court to enter default judgment"); *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.,* 722 F.2d 1319, 1323 (7th Cir.1983) ("A

---

18. *See generally id.*

19. *See* Return of Service executed as to Henry Griffin (Doc. No. 3).

20. *See generally* Docket Sheet for *DIRECTV, Inc. v. Griffin,* Case No. 6:03–cv–666–Orl–22KRS.

21. *See* Motion for Clerk's Default Against Defendant Henry Griffin (Doc. No. 4).

22. *See generally* Doc. No. 6.

23. *See generally* Plaintiff's Second Amended Motion for Final Default Judgment Against Defendant Henry Griffin (Doc. No. 17).

judgment by default may not be entered without a hearing on damages unless … the amount claimed is liquidated or capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits") (internal citations omitted); *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir.1981) ("It is well settled that a default judgment for money may not be entered without a hearing unless the amount claimed is a liquidated sum or capable of mathematical calculation") (internal citation omitted).

Where factors beyond mere arithmetic are pertinent, however, a hearing is ordinarily necessary.

## IV. LEGAL ANALYSIS

### A. COUNT I

Count I of the Complaint alleges that the Defendant received and/or assisted others in receiving Direct Television's satellite transmissions in violation of 47 U.S.C. § 605(a). *See* Complaint (Doc. No. 2), ¶ 29 at 9. That provision provides, in pertinent part, as follows:

> [N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception [ ] to any person other than the addressee, his agent, or attorney[.]

47 U.S.C. § 605(a).

Any person aggrieved by a violation of subsection(a) may bring a civil action in federal court. *See* 47 U.S.C. § 605(e)(3)(A) Upon finding a violation, the court:

(i) *may* grant temporary and final injunctions on such terms as it *may* deem reasonable to prevent or restrain violations of subsection (a);

(ii) *may* award damages as described in subparagraph (C); and

(iii) *shall* direct the recovery of full costs, including awarding reasonable attorneys' fees to [the][ ] aggrieved party who prevails.

47 U.S.C. § 605(e)(3)(B)(emphasis added)

Pursuant to paragraph (C), damages under 47 U.S.C. § 605 shall be computed, at the election of the aggrieved party, in accordance with either of the following methods of calculation:

(I) the party aggrieved *may* recover the actual damages suffered by him as a result of the violation[;] … or

(II) the party aggrieved *may* recover an award of statutory damages for each violation of subsec. (a) involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just …

47 U.S.C. § 605(e)(3)(C) (emphasis added).

■ Following these standards, this Court permanently enjoins the Defendant, Henry Giffin, from receiving, assisting in receiving, transmitting, assisting in transmitting, divulging, or publishing Direct Television satellite transmissions in violation of 47 U.S.C. § 605. Further, the Court awards Direct Television $175 in court costs and $1,225.00 in attorneys' fees for prosecuting this action. *See* Affidavit of Costs and Attorneys' Fees. However, in light of the evidence adduced at the evidentiary hearing, the Court, in its discretion, declines to award Direct Television any actual or statutory damages.

While the Defendant—through defaulting—admitted to using pirate access devices in violation of 47 U.S.C. § 605 for purposes of liability, the evidence adduced at the damages hearing indicates that the particular circumstances concerning the Defendant's actions in this instance warrant awarding no damages. *Nat'l Satellite*

*Sports, Inc. v. Garcia*, 2003 WL 21448375, *2 (N.D. Tex. June 18, 2003) (holding that in exercising its discretion to award damages under 47 U.S.C. § 605, a court "should consider both the nature of the violation in light of the statutory scheme involved, as well as the particular circumstances concerning the defendant's actions") (internal citation omitted); *see also Cablevision Systems N.Y City Co. v. Lokshin*, 980 F.Supp. 107, 113 (E.D.N.Y. 1997).

The Defendant is in the business of installing fire and security alarms. He testified he purchased pirate access devices in order to conduct an on-the-job experiment. Specifically, he investigated whether Direct Television pirate access devices could defeat the security systems on the buildings he was servicing. Ultimately, the experiment failed. Nevertheless, since Direct Television smart cards are substantially similar to the smart cards used in the Defendant's fire and security alarm business, the Court finds the Defendant's testimony compelling. This is particularly the case inasmuch as the Defendant admitted to purchasing three pirate access devices in order to conduct the experiment. Why would one need to purchase three devices to intercept Direct Television satellite transmissions when one would be sufficient? Moreover, Direct Television offered no significant evidence rebutting this testimony.

This Court is also persuaded by the fact that Direct Television produced no evidence indicating that the Defendant had the capability to employ pirate access devices in the manner proscribed by 47

U.S.C. § 605. The Defendant testified that he did not have the hardware (i.e., the satellite dish, IRD, and cabling) to intercept Direct Television satellite transmissions, and there is no evidence indicating that he was a past subscriber to Direct Television. Accordingly, it cannot be presumed that he had the ability to receive satellite transmissions.

For these reasons, the Court refuses to award Direct Television damages under 47 U.S.C. § 605.[24]

## B. COUNT II

 Count II of the Complaint alleges that the Defendant intercepted or endeavored to intercept Direct Television's satellite transmissions in violation of 18 U.S.C. § 2511(1)(a). *See* Complaint (Doc. No. 1), ¶ 33 at 10. That provision provides, in pertinent part, as follows:

> "[A]ny person who intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . shall be punished . . . or shall be subject to suit . . ."

18 U.S.C. § 2511(1)(a).

A person whose wire, oral, or electronic communication is intercepted, or disclosed, or intentionally used in violation of this chapter may, in a civil action, recover from the person or entity which engaged in that violation. *See* 18 U.S.C. § 2520(a). In that connection, a court may award the following relief:

---

24. While the circumstances in this case—the Defendant's admission of liability through default in conjunction with his testimony that he possesses pirate access devices, albeit for a legal reason—justify awarding equitable relief prohibiting the reception of Direct Television satellite transmissions in violation of the law, they do not warrant awarding monetary relief. Other than defaulting, the Defendant simply did nothing wrong. Therefore, his actions do not merit such a harsh sanction.

(1) such preliminary and other equitable or declaratory relief as *may* be appropriate;

(2) damages under subsection (c) and punitive damages in appropriate cases; and

(3) a reasonable attorney's fees and other litigation costs reasonably incurred.

18 U.S.C. § 2520(b) (emphasis added).

■ With respect to awarding damages under 18 U.S.C. § 2520, courts must adhere to the following statutory framework:

[T]he court *may*[25] assess as damages whichever is the greater of-

25. By virtue of the Wiretap Act's use of the verb "may," the majority of courts considering the issue have concluded that an award of damages pursuant to 18 U.S.C. § 2520(c)(2) is discretionary, rather than mandatory. *See, e.g., Dorris v. Absher*, 179 F.3d 420, 429 (6th Cir.1999) ("the plain language of the statute compels the conclusion that the district courts have discretion to decline the imposition of damages"); *Andrews v. Mullens*, 124 F.3d 210, 1997 WL 572198, *2 (9th Cir.1997) ("the district court did not abuse its discretion by awarding damages, *see* 18 U.S.C. § 2520(c)(2), and attorneys' fees"); *Reynolds v. Spears*, 93 F.3d 428, 434 (8th Cir.1996) ("the award of statutory damages under § 2520(c)(2) is discretionary with the district court"); *Nalley v. Nalley*, 53 F.3d 649, 652 (4th Cir.1995) ("Congress intended to confer upon district courts the discretion to decline to award damages in applying § 2520(c)(2)"); *Quillen v. Quillen*, 2003 WL 21245960, *2 (W.D.Va. May 29, 2003) ("the court in its discretion may refuse to award statutory damages where the violation of the law is de minimus") (internal citation omitted); *Schmidt v. Devino*, 206 F.Supp.2d 301, 306 (D.Conn.2001) ("In this district as well as many others, courts have held that statutory damages pursuant to § 2520(c)(2)(B) are discretionary") (internal citations omitted); *Goodspeed v. Harman*, 39 F.Supp.2d 787, 791 (N.D.Tex.1999) ("The Court finds ... that the award of statutory damages under Title III is discretionary rather than mandatory"); *Shaver v. Shaver*, 799 F.Supp. 576, 580 (E.D.N.C. 1992) ("Therefore, the court concludes that it has the discretion under § 2520(c)(2) to withhold damages from the plaintiff, despite the fact that he has proven a violation of the Act by the defendant"); *but see Rodgers v. Wood*, 910 F.2d 444 (7th Cir.1990) (finding that imposition of damages under § 2520 is mandatory); *Biton v. Menda*, 812 F.Supp. 283, 284 (D.P.R.1993) ("A district court has no discretion in imposing statutory damages under section 2520(c)(2)") (internal citation omitted).

This Court finds the majority view persuasive for four reasons. Foremost, the unambiguous language of 18 U.S.C. § 2520(c)(2) reflects that district courts have discretion in awarding statutory damages. "[W]hen the words of a statute are unambiguous, then, the first canon [of statutory construction] is also the last: judicial inquiry is complete ... The rule is that we must presume that Congress said what it meant and meant what it said." *CBS Inc. v. PrimeTime 24 J.V.*, 245 F.3d 1217, 1222 (11th Cir.2001) (internal citations and quotations omitted).

Furthermore, the history of the Wiretap Act indicates that Congress intended to provide for discretionary damage awards pursuant to 18 U.S.C. § 2520. Prior to the 1986 amendment, the Wiretap Act stated:

Any person whose communication is intercepted, disclosed, or used in violation of this chapter *shall* ... be entitled to recover ... actual damages but not less than liquidated damages computed at the rate of $ 100 a day for each day of violation or $1,000, whichever is higher ...

18 U.S.C. § 2520 (West 1970) (emphasis added).

Currently, the statute provides that a court *"may* assess ... damages." 18 U.S.C. § 2520(c)(2) (emphasis added). When the legislature changes certain language as it amends a statute, it generally indicates an intent to change the meaning of the statute. *See United States ex. rel Williams v. NEC Corp.*, 931 F.2d 1493, 1502, 1502 (11th Cir. 1991) ("when the legislature deletes certain language as it amends a statute, it generally indicates a intent to change the meaning of the statute") (internal citation and quotations omitted); *see also Muscogee (Creek) Nation v. Hodel*, 851 F.2d 1439, 1444 (D.C.Cir.1988), *cert. denied*, 488 U.S. 1010, 109 S.Ct. 795, 102 L.Ed.2d 786 (1989) ("Where the words of a later statute differ from those of a previous one on the same or related subject, the Congress must have intended them to have a different meaning"); *Nalley v. Nalley*, 53 F.3d 649, 652 (4th Cir.1995) ("When the wording of an amended statute differs in substance from the wording of the statute prior to amendment, we can only conclude that Congress intended the amended statute to have a

(A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or

(B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

18 U.S.C. § 2520(c)(2) (emphasis added).

Thus, the proper inquiry for a district court considering a damages award pursuant to 18 U.S.C. § 2520(c)(2) consists of the following steps:

(1) The court should first determine the amount of actual damages ... [suf-

fered by] the plaintiff plus the profits derived by the violator, if any. *See* 18 U.S.C. § 2520(c)(2)(A).

(2) The court should next ascertain the number of days the statute was violated, and multiply [that figure] by $100. *See* 18 U.S.C. § 2520(c)(2)(B).[26]

(3) The court should then tentatively award the plaintiff the greater of the above two amounts, unless each is less than $10,000, in which case $10,000 is ... the presumed award. *See id.*[27]

(4) Finally, the court should exercise its discretion to determine whether the plaintiff should receive *any*[28] dam-

different meaning") (internal citation omitted).

Likewise, Congress used contrasting language within 18 U.S.C. § 2520(c). Whereas § 2520(c)(1) provides that "the court shall assess damages," § 2520(c)(2) provides that "the court may assess ... damages." When "Congress uses different language in similar sections, it intends different meanings." *Iraola & CIA, S.A. v. Kimberly–Clark Corp.*, 232 F.3d 854, 859 (11th Cir.2000).

Finally, there is no significant legislative history suggesting that Congress did not intend for district courts to have discretion in awarding damages under 18 U.S.C. § 2520(c)(2).

26. Preliminarily, this Court rejects this method of calculation as a viable alternative for Direct Television. The Complaint does not allege the number of days that the Defendant violated 18 U.S.C. § 2511(1)(a). Moreover, even when accepting as true all of the allegations in the Complaint, the Court is unable to ascertain with a reasonable certainty the number of days that the statute was actually violated.

27. In its Memorandum in Support of Motion for Final Default Judgment Against Defendant Henry Griffin (Doc. No. 18), the Plaintiff requests $20,000 in statutory damages. The Court rejects that figure because it is based on the Defendant's possession of multiple pirate access devices, and this Court has already determined that possession of pirate access devices does not constitute a violation of the Wiretap Act. Moreover, the First and Sixth

Circuit Court of Appeals have determined that multiple recovery of the liquidated damage amount is unavailable under the Wiretap Act. *See Desilets v. Wal–Mart Stores, Inc.*, 171 F.3d 711, 714–716 (1st Cir.1999); *see also Smoot v. United Transp. Union*, 246 F.3d 633, 645 (6th Cir.2001), *cert. denied*, 534 U.S. 1001, 122 S.Ct. 476, 151 L.Ed.2d 390 (2001) (holding that "statutory damages under § 2520(c)(2)(B) should depend only on the number of days on which the Act was violated, rather than on whether the act was violated by a prohibited interception, disclosure, or intentional use. A particular defendant's liability under § 2520(c)(2)(B) should not turn on the consistency or variety of his violations").

28. Although a district court has the discretion to award the full amount of statutory damages authorized under § 2520(c)(2), or none at all, Congress did not grant district courts authority to prescribe an amount falling between those two choices. *See Reynolds v. Spears*, 93 F.3d 428, 435 (8th Cir.1996) ("Under § 2520(c)(2) ... Congress gave the court ... broad[ ] discretion, to award damages as authorized by the statute, or to award no damages at all"); *Nalley v. Nalley*, 53 F.3d 649, 651 (4th Cir.1995) ("The parties agree that if the district court were to award any amount of damages, it would have to award $10,000 to each party as the minimum amount"); *Schmidt v. Devino*, 206 F.Supp.2d 301, 306 (D.Conn.2001) ("the Court's discretion is limited to awarding the full amount of statutory damages or no damages at all") (collecting cases); *Goodspeed v. Harman*, 39 F.Supp.2d

ages at all in the case before it. *See* 18 U.S.C. § 2520(c)(2).

*Dorris v. Absher,* 179 F.3d 420, 430 (6th Cir.1999) (emphasis and footnotes added)

Following these standards, this Court permanently enjoins the Defendant, Henry Griffin, from intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept Direct Television's satellite transmissions in violation of 18 U.S.C. § 2511(1)(a). Moreover, this Court awards Direct Television costs and reasonable attorneys' fees. *See supra.*

However, in its discretion, the Court declines to award monetary damages under 18 U.S.C. § 2520 because it finds that the Defendant's violation of the Wiretap Act was *de minimis.*

■ When a violation of the Wiretap Act is *de minimis* a district court may, in its discretion, refuse to award statutory damages. *See Quillen v. Quillen,* 2003 WL 21245960, *2 (W.D.Va. May 29, 2003); *Goodspeed v. Harman,* 39 F.Supp.2d 787, 791 (N.D.Tex.1999) ("Most courts have declined to award damages for *de minimis* violations of the wiretap statute").

Factors relevant to that determination include: "(1) the duration of the interception or the extent of the disclosure; (2) the reason for the interception; (3) whether the defendant reasonably believed that his actions were legal; (4) whether the interceptions resulted in actual damages to the plaintiff; (5) whether the defendant profited from the interception; and (6) whether the defendant has already been punished in some other proceeding." *Goodspeed,* 39 F.Supp.2d at 791 (internal citations omitted); *see, e.g., Culbertson v. Culbertson,* 143 F.3d 825, 827 (4th Cir.1998) (finding no

abuse of discretion where district court withheld damages under Wiretap Act on the grounds that the violation at issue resulted in neither profit to defendant nor financial loss to plaintiff); *Reynolds v. Spears,* 93 F.3d 428, 436 (8th Cir.1996) (finding no abuse of discretion where district court withheld damages under Wiretap Act because there was no evidence of widespread disclosures of the intercepted communications; there were no actual damages incurred by the plaintiffs or profits earned by the defendants; the defendants reasonably believed that their actions were legal; the defendants had a legitimate business reason for violating the Act; the defendants had already been punished in previous litigation; and the defendants were on limited income); *Morford v. City of Omaha,* 98 F.3d 398, 401 (8th Cir.1996) (finding no abuse of discretion where district court withheld damages under Wiretap Act because there was no disclosure of the communications at issue, the record reflected that the defendants misunderstood the law and did not believe their actions were illegal, the plaintiff sustained no actual damages, and the duration of the interception was relatively minor); *Nalley v. Nalley,* 53 F.3d 649, 653–54 (4th Cir.1995) (finding no abuse of discretion where district court withheld damages under Wiretap Act where plaintiff sustained no financial loss and the defendant realized no profit); *Schmidt v. Devino,* 206 F.Supp.2d 301, 307–08 (D.Conn.2001) (withholding statutory damages under 18 U.S.C. § 2520 because plaintiffs failed to prove that the recording device at issue was operational for an extended period of time, there was no evidence that a sub-

---

787, 791 n. 6 (N.D.Tex.1999) ("However, the Court's discretion is limited to awarding the full amount of statutory damages or no damages at all") (internal citation omitted); *Shaver v. Shaver,* 799 F.Supp. 576, 580 (E.D.N.C. 1992) ("Congress ... g[a]ve federal courts the

discretion to either award the damages described by § 2520(c)(2) or not to award any damages under § 2520(c)(2). The ... language does not allow the court to award any damages in an amount between these two choices").

stantial number of communications were intercepted, and one of the defendant's purposes for the recordings was reasonable); *Schaffer v. Cox,* 1996 U.S. Dist. Lexis 4902, \*3 (E.D.N.C.1996) (withholding statutory damages under 18 U.S.C. § 2520(c)(2) because the unauthorized recording of communications did not result in any damages to plaintiff (there was no disclosure of the communications) or any profit to defendant).

Additionally, some courts consider the defendant's ability to pay an award of statutory damages. *See, e.g., Shaver v. Shaver,* 799 F.Supp. 576, 580 (E.D.N.C.1992) (withholding statutory damages under 18 U.S.C. § 2520 because the defendant's violations of the statute were *de minimis* and because the defendant was unemployed and did not independently own any significant items of property).

In this instance, there was no interception or disclosure of Direct Television satellite transmissions in violation of the Wiretap Act. Instead, the Defendant obtained pirate access devices to test security systems installed by his company. This is not an illegal action, and the Defendant did not profit at the expense of Direct Television. Consequently, the Court refuses to award statutory damages under 18 U.S.C. § 2520.

## V. CONCLUSION

Based on the foregoing, it is **ORDERED** that:

1. The Plaintiff, Direct Television's, September 25, 2003 Second Amended Motion for Final Default Judgment Against Defendant Henry Griffin (Doc. No. 17) is **GRANTED**.

2. The Defendant, Henry Griffin, is hereby permanently enjoined from receiving, assisting in receiving, transmitting, assisting in transmitting, divulging, or publishing Direct Television satellite transmissions in violation of 47 U.S.C. § 605.

3. The Defendant, Henry Griffin, is hereby permanently enjoined from intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept Direct Television's satellite transmissions in violation of 18 U.S.C. § 2511(1)(a).

4. The Clerk shall enter final default judgment providing that the Plaintiff, DirecTV, Inc. shall take nothing on its claims against the Defendant, Henry Griffin. The judgment shall further provide that the Plaintiff, DirecTV, Inc., shall recover $175 in costs and $1,225.00 in attorneys' fees for prosecuting this action.

5. The Clerk of Court shall close the file.

6. All other pending motions are denied.