**DIRECTV, INC., Plaintiff,**

v.

**Robert BLONIARZ, Defendant.**

No. 2:02–CV–201.

United States District Court,
W.D. Michigan,
Northern Division.

March 24, 2004.

Bradley H. Darling, Honigman Miller Schwartz and Cohn LLP, Detroit, MI, Angela Emlet-Dardas, Brigham Cook Smith, Janice Keays Smith, Honigman Miller Schwartz and Cohn LLP, Lansing, MI, Michael R. Stillman, Stillman Law Office, West Bloomfield, MI, Plaintiff.

## *OPINION*

QUIST, District Judge.

Plaintiff, DIRECTV, Inc. ("DIRECTV"), has sued Defendant, Robert Bloniarz ("Bloniarz"), alleging that he violated the Federal Communications Act of 1934, 47 U.S.C. § 605, the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1986 and the Communications Assistance for Law Enforcement Act of 1994, 18 U.S.C. §§ 2510–22 (the "Wiretap Act"), and Michigan common law by purchasing and using access cards and other devices ("Pirate Access Devices") to decrypt, receive, and view DIRECTV's encrypted satellite transmissions of television programming. Bloniarz failed to appear or defend,

and on July 14, 2003, the Clerk entered a default against Bloniarz. On January 22, 2004, the Court issued an Order setting a hearing on damages on March 11, 2004, and requiring DIRECTV to serve a copy of the Order on Bloniarz and certain other defaulting defendants. On January 23, 2004, DIRECTV filed a proof of service confirming service on Bloniarz. The damages hearing was held on March 11, 2004. Bloniarz failed to appear or offer evidence regarding damages. DIRECTV presented evidence and argument in support of its request for damages. The matter is now ready for decision.

On May 25, 2001, DIRECTV executed writs of seizure at the mail shipping facility used by several major suppliers of Pirate Access Devices, including Vector Technologies; DSS–Stuff; Shutt, Inc.; Intertek; WhiteViper; and DSS–Hangout (the "Suppliers"). Among other things, DIRECTV obtained shipping records, email communications, and credit card receipts identifying purchasers, or end-users, of illegal Pirate Access Devices from the Suppliers. DIRECTV used that information to obtain settlements (including monetary payments, stipulated injunctive relief, and turnover of the devices) from end-users or, failing a settlement, to sue end-users in federal court. This is one of perhaps thousands of suits DIRECTV has filed throughout the country against end-users.

■ DIRECTV alleged in its complaint that Bloniarz purchased a Viper Smart Card Reader/Writer ("Reader/Writer") on July 17, 2002, from WhiteViper Technologies and purchased another Reader/Writer

from White Viper Technologies on October 10, 2000. DIRECTV also alleged that Bloniarz used those devices to decrypt and view, and assisted others in decrypting and viewing, DIRECTV's encrypted satellite signal. It is well-established that once a default is entered against a defendant, that party is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *Antoine v. Atlas Turner, Inc.,* 66 F.3d 105, 110–11 (6th Cir.1995); *Cotton v. Slone,* 4 F.3d 176, 181 (2d Cir.1993). Therefore, by his default, Bloniarz has admitted all facts to establish his liability. DIRECTV is entitled to a default judgment pursuant to Fed.R.Civ.P. 55(b)(1). However, DIRECTV must still establish its damages. *Antoine,* 66 F.3d at 110.

DIRECTV requests an award of damages in the amount of $20,000 plus $850 as reasonable attorney's fees and costs. DIRECTV requests statutory damages under the Communications Act, 47 U.S.C. § 605, and the Wiretap Act, 18 U.S.C. § 2520. Under the Communications Act, an aggrieved party such as DIRECTV may recover statutory damages "in a sum of not less than $1,000 or more than $10,000, as the court considers just."[1] 47 U.S.C. § 605(e)(3)(C)(i)(II). An aggrieved party is also entitled to reasonable attorney's fees and costs. 47 U.S.C. § 605(e)(3)(B)(iii).

■ Pursuant to the Wiretap Act, the court may assess as damages whichever is the greater of—

> (A) the sum of the actual damages suffered by the plaintiff and any prof-

---

1. A court also has discretion to increase the award to not more than $100,000 where the violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," or to decrease the award to not less than $250 where the court finds that the defendant "was not aware and had no reason to believe that his acts constituted a violation of" the Communications Act. 47 U.S.C. § 605(e)(3)(C)(ii), (iii). The Court finds that there are no facts in this case calling for either an increase or a decrease in the amount of statutory damages.

its made by the violator as a result of the violation; or

(B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

18 U.S.C. § 2520(c)(2). In addition, a court may award reasonable attorney's fees and costs. 18 U.S.C. § 2520(b)(3). The Sixth Circuit has held that the proper inquiry in assessing damages under § 2520(c)(2) is as follows:

(1) The court should first determine the amount of actual damages to the plaintiff plus the profits derived by the violator, if any. *See* 18 U.S.C. § 2520(c)(2)(A).

(2) The court should next ascertain the number of days that the statute was violated, and multiply by $100. *See* 18 U.S.C. § 2520(c)(2)(B).

(3) The court should then tentatively award the plaintiff the greater of the above two amounts, unless each is less than $10,000, in which case $10,000 is to be the presumed award. *See id.*

(4) Finally, the court should exercise its discretion to determine whether the plaintiff should receive any damages at all in the case before it. *See* 18 U.S.C. § 2520(c)(2).

*Dorris v. Absher,* 179 F.3d 420, 430 (6th Cir.1999). Here, DIRECTV is not seeking actual damages and did not offer any evidence as to the number of days the violation occurred. Therefore, under this statute, the Court may exercise its discretion to either award DIRECTV $10,000 or to award no damages at all. *Id.; see also DIRECTV, Inc. v. Griffin,* 290 F.Supp.2d 1340, 1347–48 n. 28 (M.D.Fla.2003) ("Although a district court has the discretion to award the full amount of statutory damages authorized under § 2520(c)(2) or none at all, Congress did not grant district courts authority to prescribe an amount falling between those two choices."). However, if the Court determines that an award of damages for some amount less than $10,000 is appropriate, that award must be made pursuant to 47 U.S.C. § 605(a), which provides for a range of damages.

■ In determining the proper amount of damages, the Court is aware that some courts have awarded minimal statutory damage awards in similar DIRECTV cases. *See DIRECTV, Inc. v. Kaas,* 294 F.Supp.2d 1044, 1049 (N.D.Iowa 2003) (concluding that an award of $1,000 was sufficient because there was no evidence that the defendant profited from the device and, although it was a reasonable assumption, there was no evidence that the defendant even used the device); *DIRECTV, Inc. v. Albright,* No. Civ. A. 03–4603, 2003 WL 22956416, at *3 (E.D.Pa. Dec.9, 2003) (awarding $1,000 in damages under § 605(e) because there was no evidence that the defendant acted wilfully or sought to profit from use of the device). At least one other court has concluded that an award of $10,000 was proper. *See DIRECTV, Inc. v. Braun,* No. CIV 3:03CV937 (SRU), 2004 WL 288805, at *2 (D.Conn. Feb.9, 2004). Based upon all of the relevant considerations, the Court concludes that an award of $10,000 is appropriate. By virtue of his default, Bloniarz has admitted that he purchased the Reader/Writers and that he used those devices to illegally intercept DIRECTV's signal. Moreover, DIRECTV has presented other evidence showing that Bloniarz was a DIRECTV subscriber and had all of the equipment required to intercept DIRECTV's signal, so there is no question that Bloniarz possessed the means to receive the signal. The $10,000 award takes into consideration that DIRECTV offers an extensive variety of programming and that an individual with unrestricted access to these programs could easily receive thousands of dollars worth of free viewing over the course of just one year. More-

over, DIRECTV has presented evidence showing that it incurs significant expense and employs significant resources in order to combat piracy. (Whalen Aff. ¶¶ 5–11.) This expense, of course, is another aspect of DIRECTV's damages beyond the loss of subscription and pay-per-view fees, and is appropriately reflected in the award.

 DIRECTV requests a total award of $20,000, based upon the number of devices Bloniarz purchased. The Court rejects DIRECTV's "per-device" damage calculation for two reasons. First, the Sixth Circuit has held that the $10,000 liquidated damages amount under § 2520(c)(2)(b) should not be applied on a per-violation basis. *Smoot v. United Transp. Union,* 246 F.3d 633, 645 (6th Cir.2001). Second, DIRECTV's request would essentially require the Court to accept the argument that mere possession of a pirate access device constitutes a violation of the Wiretap Act. While it has thus far been unnecessary for this Court to rule on the issue of whether a private right of action exists under 18 U.S.C. § 2512 for mere possession of a pirate access device (primarily because DIRECTV has dismissed those claims in opposition to motions for summary judgment), this Court agrees with the numerous other courts that have determined that mere possession does not give rise to a private cause of action under § 2512. *See, e.g., DIRECTV, Inc. v. Murray,* 307 F.Supp.2d 764, 768–69 (D.S.C.2004); *DIRECTV, Inc. v. Terry,* No. Civ. A. 2:03–CV–0137–J, 2004 WL 350480 (N.D.Tex. Jan.29, 2004).

Finally, DIRECTV requests an award of attorney's fees in the amount of $850. The Court concludes that this is a reasonable fee amount for the work performed in this case. Therefore, the Court will award DIRECTV $10,000 in statutory damages and $850 in attorney's fees.

An Order consistent with this Opinion will be entered.